# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **GUSTAVO A. MOYA, JR.,** | |
| Plaintiff, | Docket No.: 18-cv-14829 |
| v. | |
| **UNITED AIRLINES, INC.,** *et al.*, | **OPINION** |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

This matter comes before the Court on Defendants United Airlines, Inc.'s and Charlean Gmunder's Motion to Dismiss Count Four and Strike Certain Allegations from the First Amended Complaint, ECF No. 5, and Plaintiff Gustavo A. Moya, Jr.'s Cross Motion to Amend/Correct the First Amended Complaint and to Consolidate the Matter with *Lee v. United Airlines*, ECF No. 8. For the reasons set forth below, the Motions are both **GRANTED IN PART AND DENIED IN PART**.

## I.  BACKGROUND[1]

Defendant United Airlines, Inc. ("United") hired Plaintiff Gustavo A. Moya, Jr. ("Plaintiff") as a Training Manager in the Food Services Department in June 2014. 1st Amend. & Corrected Compl. ¶¶ 14-15 ("AC"), ECF No. 1-1. United promoted Plaintiff to Food Safety Manager responsible for preventative controls. AC ¶ 52. His responsibilities included reporting on food safety compliance for United's Newark, New Jersey, catering facilities. AC ¶ 53.

Between October 2016 and August 2018, Plaintiff "perceived and uncovered numerous critical food safety and life safety issues" and "repeatedly reported those matters to United." AC ¶¶ 56, 58. On or about July 23, 2018, after United failed to remedy the unsafe food conditions, Plaintiff reported the conditions to the U.S. Food and Drug Administration ("FDA Report"). AC ¶ 112. Plaintiff alleges that because of his reports (both internal and to the FDA) and sexual orientation, United and its employees retaliated and discriminated against him. For example, after Plaintiff filed the FDA Report, he was placed on a forty-five-day action plan, stripped of his duties, and blocked from participating in work-related functions.

---

[1] The following facts, taken from the Amended Complaint and documents "integral to or explicitly relied upon in the [Amended C]omplaint," are accepted as true for the purpose of this Opinion. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997).

1

AC ¶ 116. United also forced Plaintiff to work nights and weekends seven days per week, without breaks, and sometimes in shifts up to twenty-four hours. AC ¶¶ 117-119, 122. On August 27, 2018, Defendants Alisa Atwater (Director of Regulatory Compliance, Food Safety) and Charlene Gmunder (Vice President, Catering Operations) told Plaintiff that he was being transferred to United's headquarters in Chicago, and must relocate within a week. AC ¶¶ 123-28.

## II.     PROCEDURAL HISTORY

Plaintiff brought suit in New Jersey state court for violations of the New Jersey Conscientious Employee Protection Act ("CEPA"), the New Jersey Law Against Discrimination ("LAD"), and material contract breach. AC ¶ 1. Two other United employees, Marcia Lee and Eliot Mosby (together with Moya, "Three Plaintiffs"), filed separate suits relating to United's catering services. AC ¶¶ 39-40. United removed Lee's suit to the District of New Jersey on October 9, 2018. *See Lee v. United Airlines*, 2:18-cv-14772 (D.N.J.) (hereinafter, "*Lee Action*") (pending before Judge Madeline Cox Arleo). The next day, United removed this matter. *See* Notice of Removal, ECF No. 1. Mosby's action remains in state court.

United then moved to dismiss the breach of contract claim and strike various allegations from the Amended Complaint in this matter. *See* Def. Br. in Support of Mot. to Dismiss, ECF No. 5 ("Motion"). In Lee's suit, United moved to dismiss the entire complaint. *Lee Action*, Mot. to Dismiss, ECF No. 4. In both cases, Plaintiff opposed the motions to dismiss and cross moved to file a Proposed Second Amended and Corrected Complaint ("PSAC") and to consolidate the two matters. *See* Pl. Opp. and Cross-Motion, ECF No. 8 ("Opposition"); *Lee Action*, Opp. and Cross Mot. to Dismiss, ECF No. 7. In reply, United and Gmunder[2] argued Plaintiff's proposed amendments are futile. Def. Reply Br., ECF No. 12 ("Reply").

## III.    BREACH OF CONTRACT CLAIM

### A.     Motion to Dismiss Legal Standard

FRCP 12(b)(6) provides for the dismissal of a complaint if the plaintiff fails to state a claim upon which relief can be granted. The movant bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). "[A]ll allegations in the complaint must be accepted as true, and the plaintiff must be given the benefit of every favorable inference to be drawn therefrom." *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). But the court is not required to accept as true "legal conclusions,"

---

[2] Together with United, "Defendants." Gmunder did not originally join the Motion. However, this appears to have been an oversight because Gmunder (represented by the same counsel as United) is included in the Reply, labeled "Defendants United Airlines, Inc.'s *and Charlean Gmunder's* Memorandum of Law in *Further Support of Their* Partial-Motion to Dismiss." Reply (emphasis added).

and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

To survive a 12(b)(6) motion, "a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

### B. Breach of Contract Claim as Alleged in the Amended Complaint

Plaintiff alleges that he "and United were parties to a binding employment agreement, supported by good and valuable consideration." AC ¶ 162. The alleged "[a]greement included an obligation that United render its contractual performance in good faith, and in a manner that would neither interfere, hamper, nor deny Plaintiff the performances he bargained to receive." AC ¶ 163. United allegedly breached their agreement by (a) forcing "Plaintiff to involuntarily resign" and (b) "harass[ing], retaliate[ing] against, and discriminat[ing] against Plaintiff for purposes of interfering with, hampering, and/or denying Plaintiff the performances he bargained to receive." AC ¶ 165. In arguing for dismissal, Defendants note "the Complaint fails to identify any actual contract or employment agreement that United could have violated." Mot. at 14-17.

Breach of contract complaints must establish four elements to survive a motion to dismiss: (1) the parties entered into a contract; (2) the plaintiff performed under the contract; (3) the defendant breached the contract; and (4) the breach caused an alleged loss. *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting *Model Jury Charge (Civil)*, § 4.10A "The Contract Claim–Generally" (1998)). As to the third element, a complaint must allege *which* provision of a contract the defendant breached. *See GKE Enterprises, LLC v. Ford Motor Credit Co. LLC USA*, 09-cv-4656, 2010 WL 2179094, at *3 (D.N.J. May 26, 2010).

Here, Plaintiff fails to plead the first and third elements. As to the first element, Plaintiff pleads only the legal conclusion that the parties entered a binding agreement. *See* AC ¶¶ 4 ("Moya is party to a binding and enforceable employment contract with United"), 162 ("Plaintiff and United were parties to a binding employment agreement."). But he pleads no *facts* from which the Court could reasonably infer an employment contract existed. *See Ashcroft*, 556 U.S. at 678 (requiring factual content for the court to reasonably infer that the defendant is liable).

Plaintiff never alleges which provision of the unidentified "employment agreement" United breached either. *See GKE Enterprises, LLC*, 2010 WL 2179094, at *3. Plaintiff does assert their agreement "included an obligation that United render its contractual performance in good faith, and in a manner that would neither interfere, hamper, nor deny Plaintiff the performances he bargained to receive." AC ¶ 163. But that obligation is not alleged to be a term of an actual contract. It is the legal obligation their agreement allegedly triggered, not a

3

fact.³ Plaintiff fails to set forth any term of any actual contract Defendants allegedly breached. Therefore, the breach of contract claim is **DISMISSED**.

### C. Proposed Amended Contract Claim

The PSAC amends the breach of contract claim to clarify that Plaintiff did not involuntarily resign from United, but instead was forced to leave his position. PSAC ¶ 165.

FRCP 15(a) governs motions to amend. At this stage, "a party may amend its pleadings only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Leave to amend is generally granted unless there is: (1) undue delay or prejudice; (2) bad faith; (3) dilatory motive; (4) failure to cure deficiencies through previous amendment; or (5) futility. *Foman v. Davis*, 371 U.S. 178, 182 (1962). The futility analysis on a motion to amend is essentially the same as a Rule 12(b)(6) motion. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1332 (3d Cir. 2002). The ultimate decision to grant or deny leave is in the courts' discretion. *See, e.g.*, *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 330 (1970).

The breach of contract claim, as amended by the PSAC, would not survive a motion to dismiss, and thus amendment is futile. The PSAC does nothing to remedy the above-discussed deficiencies. *See* PSAC ¶¶ 161-66. Therefore, leave to amend—as to the breach of contract claim—is **DENIED**.

### IV. PROPOSED DEFAMATION CLAIMS

The PSAC seeks to add a defamation count based on: (1) a United spokesperson's statement that "the lawsuits [filed by Lee, Moya and Mosby] are without merit" and that "one of the three plaintiffs has left the company voluntarily, and two others *were relocated from the catering facility and given other roles because they were not satisfactorily doing their jobs*"; and (2) United's counsels' statement that "plaintiff (Lee) is not entitled to file suit under the NJ LAD or CEPA, as she neither lived nor worked in New Jersey during her . . . tenure with United." PSAC ¶¶ 169, 171 (alterations and emphasis in PSAC).

As already discussed, the futility analysis on a motion to amend is essentially the same as a motion to dismiss. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d at 1332. To survive a motion to dismiss, defamation claims require "(1) the assertion of a false and defamatory statement concerning another; (2) the unprivileged publication of that statement to a third party; and (3) fault amounting at least to negligence by the publisher." *DeAngelis v. Hill*, 847 A.2d 1261, 1267-68 (N.J. 2004) (quoting Restatement (Second) of Torts § 558).

---

³ Plaintiff likely pleads this obligation based on the implied covenant of good faith and fair dealing, which would apply *if* Plaintiff had an employment contract.

### A. The Lawsuits Are Without Merit

The PSAC implies Plaintiff was defamed because a United spokesperson said the Three Plaintiffs' lawsuits were "without merit." PSAC ¶ 169. Defendant argues this is non-defamatory opinion and does not even identify Plaintiff. Reply at 14-15.

To be "defamatory," a statement must "tend[] to lower the subject's reputation in the estimation of the community or to deter third persons from associating with him." *Lynch v. New Jersey Educ. Ass'n*, 735 A.2d 1129, 1153 (N.J. 1999). Statements of opinion are considered non-defamatory unless they imply verifiably-false underlying facts. *Leang v. Jersey City Bd. of Educ.*, 969 A.2d 1097, 1114 (N.J. 2009) (citations omitted); *Lynch*, 735 A.2d at 1137. Whether a statement is one of fact or opinion, and more broadly whether it is susceptible to defamatory meaning, is a question of law for the Court. *Kotlikoff v. The Cmty. News*, 444 A.2d 1086, 1088 (N.J. 1982). Courts generally find parties' statements regarding the probable outcome of a litigation to be non-actionable opinion. *Alzheimer's Found. of Am., Inc. v. Alzheimer's Disease & Related Disorders Ass'n, Inc.*, 796 F. Supp. 2d 458, 471 (S.D.N.Y. 2011) (citing *In re Polk's Model Craft Hobbies, Inc.*, No. 92–23178, 1995 WL 908275 at *25 (Bankr. D.N.J. Dec. 28, 1995) (dismissing defamation counter claim where allegedly defamatory statements regarding defendant producing "knock offs" were contained in plaintiff's press release announcing lawsuit)); *see also Blakey v. Cont'l Airlines, Inc.*, 751 A.2d 538, 558 (N.J. 2000) ("Some of the messages appear to be expressions of opinion concerning the pending litigation, the truth of which simply cannot be assessed."); *Ferraro v. City of Long Branch*, 714 A.2d 945, 956 (N.J. App. Div. 1998) (dismissing claim based on statements regarding the frivolous nature of suit).

The accusation that Plaintiff's claims are "without merit" is non-defamatory opinion regarding the probable outcome of a lawsuit. *See, e.g.*, *Alzheimer's Found. of Am., Inc.*, 796 F. Supp. 2d at 471; *Ferraro*, 714 A.2d at 956. The claim would not survive a motion to dismiss and thus, amendment is futile.

### B. Plaintiff Was Relocated Due to Unsatisfactory Performance

The PSAC alleges Plaintiff was defamed by a United spokesperson's statement that two of the Three Plaintiffs "were relocated from the catering facility and given other roles because they were not satisfactorily doing their jobs." PSAC ¶ 169 (emphasis omitted). Defendants argue that "[e]ven assuming Plaintiff could get around the fact that the statement does not identify him by name, this court has previously found that statements about an employee's job performance – which were far more critical than what is alleged here – were not defamatory." Reply at 15 (citing *Mangan v. Corporate Synergies Group*, 834 F. Supp. 2d 199 (D.N.J. 2011)).

Asserting Plaintiff was relocated and given a new role because he was "not satisfactorily doing [his] job" is capable of defamatory meaning. It implies that, as a matter of fact, Plaintiff was so incompetent that United had to give him a new job. *See Lynch*, 735 A.2d at 1153 (finding statements that "lower the subject's reputation in the estimation of the community" to be defamatory). The truth of that statement is objectively verifiable through

United's employees and internal documents. *See Leang*, 969 A.2d at 1114 (holding that to be actionable, a statement of fact must be capable of being proven true or false).

While the statement is capable of defamatory meaning, the Complaint does not allege a third party understood the statement to describe Plaintiff. To state a cause of action, "the circumstances must show that the statements are 'of and concerning' the plaintiff [and i]t must appear that a third person understood the statements to relate to the plaintiff." *Printing Mart-Morristown v. Sharp Elecs. Corp.*, 563 A.2d 31, 46 (N.J. 1989) (citations omitted). By using brackets, the Complaint alleges that the statement is "of and concerning" Plaintiff, which is plausible given the context. PSAC ¶ 169. But the pre-altered statement does not identify Plaintiff by name. *See* Cohen Aff. Ex. 5 at 1, ECF 12-6. It merely describes "three former managers at that catering facility," only two of which were said to have inadequately performed their duties. *Id.* The PSAC does not allege anyone to have understood the reference to "three former managers" (and specifically to one of the two transferred managers), to refer to Plaintiff. *See* PSAC ¶¶ 167-179. Therefore, Plaintiff's allegations are deficient, and amendment is futile.

### C. Lee Is Not Entitled to File Suit

The statement that "plaintiff (Lee) is not entitled to file suit under the NJ LAD or CEPA, as she neither lived nor worked in New Jersey during her . . . tenure with United" does not "concern" Plaintiff Moya, and thus Amendment is futile. *Printing Mart-Morristown*, 563 A.2d at 46.

For these reasons, leave to amend—as to the defamation claim—is **DENIED**.

## V. STRIKING ALLEGATIONS

Defendants move to strike paragraphs 21-27, 31, 39-41, 139, and all references to Mosby and Lee in paragraphs 74-76 and 85 from the Amended Complaint. Mot. at 13. Plaintiff responds by arguing United's request is premature and fails to acknowledge Plaintiff's right to present "me too" evidence. Opp. at 6. However, Plaintiff did voluntarily strike paragraphs 21-22 and 139 from the PSAC.

> The purpose of a motion to strike is to simplify the pleadings and save time and expense by excising from a plaintiff's complaint any redundant, immaterial, impertinent, or scandalous matter which will not have any possible bearing on the outcome of the litigation. Because of the drastic nature of the remedy, however, motions to strike are usually viewed with disfavor and will generally be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.

*Garlanger v. Verbeke*, 223 F. Supp. 2d 596, 609 (D.N.J. 2002) (citations omitted).

The allegations contained in paragraphs 23-27 are irrelevant to this controversy and confuse the issues. They relate to United's Denver facility where Plaintiff never worked. *See* AC ¶¶ 23-27. They have no possible relation to this controversy. *See Garlanger*, 223 F.

6

Supp. 2d at 609. But they also relate to food-safety violations; thus, they may confuse the issues.

Paragraph 31 alleges numerous pending complaints with the FDA and other federal agencies regarding United's Newark facility. AC ¶ 31. Without a more complete record, the Court cannot conclude these allegations have "no possible relation to the controversy," *see Garlanger*, 223 F. Supp. 2d at 609. They may help demonstrate Plaintiff's reports were accurate, in turn evidencing Defendants' reasons for taking adverse employment actions were pretextual.

Paragraphs 39-40 introduce two of the Three Plaintiffs (Mosby and Lee) and their lawsuits. AC ¶¶ 39-40. The Court cannot conclude that Lee, Mosby, or their lawsuits have "no possible relation to th[i]s controversy." *Garlanger*, 223 F. Supp. 2d at 609; *see also* AC ¶¶ 75-76, 85, 88, 90-91, 105, 132 (outlining conduct involving Three Plaintiffs). However, the allegation regarding Lee's marital status is wholly irrelevant and may unduly prejudice Defendants. Therefore, the language between "Marcia Lee ('Lee')" and "maintains" must be struck from paragraph 40.

As to Defendants' motion to strike references to Mosby and Lee from paragraphs 74-76 and 85, granting such a request could only confuse the issues further. Lee and Mosby allegedly played a role in the facts underlying this case. *See* AC ¶ 75-76, 85, 88, 90-91, 105, 132. Plaintiff describes those facts using Lee and Mosby's names, the usual way to which individuals are referred. Defendants provide no convincing reason why using Lee and Mosby's names would confuse the issues or cause prejudice.

Paragraph 41 introduces another United employee named Mike Landers. AC ¶ 41. Allegedly, after Landers "reported serious wrongdoing to United regarding its food safety practices[, he] suffered unlawful retaliation." Evidence of an improper motive in taking adverse employment actions against Landers may be probative to United's reasons for taking similar actions against Plaintiff. *See Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 111 (3d Cir. 1999) (finding evidence of other acts of harassment "extremely probative as to whether the harassment was sexually discriminatory"). Thus, the allegation is possibly related to this controversy.

For these reasons, Defendants' Motion to Strike is **GRANTED** with respect to paragraphs 23-27 and the reference to Lee's marital status contained in paragraph 40 and **DENIED** with respect to paragraphs 31, 39, 74-76, 85, and the remainder of paragraph 40.

## VI.     OTHER PROPOSED AMENDMENTS TO THE COMPLAINT

Defendant does not object to the other proposed amendments in the PSAC. Therefore, Plaintiff's Motion to Amend is **GRANTED IN PART**, subject to the above-described limitations. *See supra* Part III.C, IV-V.

## VII. CONSOLIDATION WITH THE *LEE* SUIT

Plaintiff requests that this matter be consolidated with the *Lee Action*, at least for purposes of discovery. Opp. at 19. Lee made an identical request in her suit. *See Lee Action*, Opp. and Cross Mot. at 15. Defendants oppose consolidation. Reply at 8-10.

"If actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." FRCP 41(a). Under the first-filed rule, "[i]n all cases of federal concurrent jurisdiction, the court which first has possession of the subject must decide it." *E.E.O.C. v. University of Pennsylvania*, 850 F.2d 969, 971–72 (3d Cir.1988) (citations omitted). "The purpose of the first-filed rule is . . . to give a court the power to enjoin the subsequent prosecution of proceedings involving the same parties and the same issues already before another district court." *Alvarez v. Gold Belt*, LLC, 8-cv-4871, 2009 WL 1473933, at *1 (D.N.J. May 26, 2009) (citations omitted).

As the court noted in *Alvarez v. Gold Belt, LLC*, "because the first-filed rule is designed to avoid concurrent litigation of the same issues, between the same parties, *in more than one federal court*, it does not technically apply to the case here. The principles behind first-filed rule, however, are implicated." *Id.* at *2-3 (emphasis added) (denying without prejudice plaintiff's motion for class certification because a previously-filed case in the same district involved the same facts, claims and, as they were proposed class actions, parties).

Here, the same principles are at play. In both this matter and the *Lee Action*, Plaintiffs move to consolidate with the other matter. *See* Opp. at 19; *Lee Action*, Opp. and Cross Mot. at 15. While the two suits do not involve identical parties or a proposed class,[4] deciding whether to consolidate will implicate the parties of both cases regardless of which judge makes a final determination. Therefore, consistent with *Alvarez*, Plaintiff's request to consolidate is **DENIED WITHOUT PREJUDICE**. The Court will defer to Judge Arleo's determination on consolidation in the first-filed case.

## VIII. CONCLUSION

For the reasons set forth above, Defendants' Motion to Dismiss, ECF No. 5, and Plaintiff's Cross Motion to Amend and Consolidate, ECF No. 8, are both **GRANTED IN PART AND DENIED IN PART**. An appropriate order follows.

|  |  |
|---|---|
|  | */S/ William J. Martini* |
| **Date: January 29, 2019** | **WILLIAM J. MARTINI, U.S.D.J.** |

---

[4] For this reason, the Court has not deferred on deciding the Motion to Dismiss and Cross Motion to Amend.

8